BAC HOME LOANS SERVICING, L.P., et al., Appellant,

v.

EVERMAN et al., Appellees.

[Cite as *BAC Home Loans Servicing, L.P. v. Everman,*
192 Ohio App.3d 499, 2011-Ohio-749.]

Court of Appeals of Ohio,
Second District, Darke County.

No. 2009 CA 15.

Decided Feb. 18, 2011.

500

Rick D. DeBlasis and Adam Fogelman, for appellant BAC Home Loans Servicing, L.P.

John Everman and Tammy Everman, pro se.

R. Kelly Ormsby, Darke County Prosecuting Attorney, and Margaret B. Hayes, Assistant Prosecuting Attorney, urging affirmance for amici curiae, Clerk of Courts, Sheriff, and Treasurer for Darke County.

FROELICH, Judge.

{¶ 1} BAC Home Loans Servicing, L.P. ("BAC") appeals from a judgment of the Darke County Court of Common Pleas, which entered a default judgment in favor of BAC on a mortgage note executed by John Everman and ordered that the mortgaged property owned by Everman and his wife be conveyed to BAC by commissioner's deed. For the following reasons, the trial court's judgment will be reversed and the case remanded for further proceedings.

I

{¶ 2} In July, 2007, Everman obtained a 30-year loan of $104,500 from BAC to finance the purchase of real property in Ansonia, Ohio. Everman signed a promissory note, agreeing to pay the loan with an initial annual interest rate of 8.375 percent. The loan was secured by a mortgage executed by Everman and his wife.

{¶ 3} On June 18, 2009, BAC filed a complaint in foreclosure against the Evermans, claiming that Everman had defaulted on the note and that the note was secured by the real property. BAC sought judgment against Everman for $103,331.86, with interest at a rate of 8.375 percent per year from December 1, 2008, and other expenses. BAC also requested that the mortgage be foreclosed, that the property be ordered sold, and that the bank be paid from the proceeds of the sale. Copies of the original note and the mortgage were attached to BAC's complaint.

{¶ 4} The same day, the trial court sua sponte filed an "Entry—Briefing Schedule and Notice of Intent to Order Mediation, Short Sale or Deed in Lieu of Foreclosure." The entry stated that the court "has determined that reducing [foreclosure] litigation costs and delays is in the interests of all parties" and presented three options for the parties: (1) if the owners desire to keep the property, the owners "shall assemble income verification and financial statement information to negotiate a means to re-affirm the debt," (2) if the owners anticipate a sale of the real property to third parties, the owners should forward "information to the Court and Plaintiff's counsel regarding the 'short sale' such as the purchase contract and appraisal," and (3) if the owners are unable to keep the real property and have no anticipated third party buyer, "then a 'deed in lieu of foreclosure' should be considered to accomplish transfer of the realty." The trial court indicated that the homeowners should promptly notify the court and plaintiff's counsel of their intentions.

{¶ 5} The court concluded, "[I]t is therefore ordered and decreed that the parties hereto shall comply with the following schedule: (1) within 28 days after the service of this Entry, Defendant owner may file a request for the court to commence loan re-affirmation mediation, or to Order a deed in lieu of foreclosure or for approval of a short sale to a third party, both in satisfaction of mortgage indebtedness; (2) within 42 days after service of this Entry, Plaintiff and other parties may file any response to Defendant owner's request, or objection to the Court's Orders herein, or otherwise brief why the Court should not order transfer of the real estate herein by short sale or deed in lieu of foreclosure. Thereafter, unless additional time for responses or replies is granted, this matter shall be submitted for adjudication on the pleadings unless otherwise notified."

{¶ 6} The Evermans were each served with the complaint and summons. They did not file an answer or otherwise respond to either the complaint or the trial court's entry.

{¶ 7} On September 3, 2009, BAC moved for default judgment. On the same day, the trial court issued a notice to show cause, stating that the Evermans had been properly served. The court's show-cause order noted that proceeding without a judicial sale had "numerous advantages to the parties and involved

government entities" and gave notice of the court's intent to "cause the transfer of the realty by Court-appointed Commissioner, under direction of the Court, in full satisfaction of the mortgage indebtedness of Plaintiff, free and clear of all liens, and with forfeiture of the owner's right of redemption" (although this was not one of the options presented in its June 18, 2009 order). The court ordered any party opposing the transfer to file objections by October 1, 2009; parties in agreement with the proposed transfer were permitted to file a statement indicating such agreement by the same date.

{¶ 8} An evidentiary hearing was held on September 15, 2009, in regard to approximately 20 similarly situated cases. Several lenders argued against the use of a commissioner's deed to transfer the property and offered the expert testimony of Kenton J. Kuehnle and Samuel Shellhaas. Kuehnle, an attorney with 39 years' experience in real estate law and titles, discussed foreclosure actions historically, the statutory requirements, and the marketability (or lack thereof) of title as a result of the court's proposed procedure. Shellhaas also discussed the marketability of title under the court's proposed procedure. Additional related argument was heard by the court on October 22, 2009.

{¶ 9} After requesting and being given an extension of time, BAC filed an objection to the court's intent to transfer of title by commissioner's deed on October 21, 2009.

{¶ 10} On October 26, 2009, the Clerk of Courts for Darke County submitted an affidavit attesting to the significant amount of time and effort expended by the clerk, the sheriff, and the court to process foreclosure cases and the cost of transferring the property by public sale, and explaining that in the majority of foreclosure cases, multiple orders of sale are issued.

{¶ 11} On October 30, 2009, the trial court entered a default judgment to BAC on the note in the amount of $103,331.86 plus accrued interest from December 1, 2008, at 8.375 percent per year, plus any advancements for taxes or insurance. The court further found that BAC was entitled to have the equity of redemption foreclosed and that BAC's mortgage was the first and best lien on the property, except for the interest of the Darke County Treasurer for any unpaid taxes and assessments. The court overruled BAC's objections to the use of the commissioner's deed and ordered the property conveyed to BAC by commissioner's deed. The court appointed Margaret Hayes, who is also an assistant county prosecuting attorney, as commissioner, and set forth in the judgment the procedures for the conveyance of the property. The Evermans were granted three days to exercise the equity of redemption.

{¶ 12} In its judgment, the court gave its reasons for overruling BAC's objections. The court found that (1) foreclosure proceedings were equitable proceedings, and the authority to convey by commissioner's deed was within the

court's equitable powers, (2) it had provided due process notice to all parties, (3) BAC had not "provided any objections which convince the Court that conveyance of title by commissioner's deed is fundamentally unfair or unlawful," including that R.C. Chapters 2327 and 2329 did not provide that R.C. 2329 provided an exclusive remedy, (4) the considerations of third parties who are not joined in the litigation were not ripe for adjudication, (5) there were no violations of the Ohio Marketable Title Act or the Ohio Marketable Title standards, and (6) the commissioner's deed was not a voluntary conveyance like a deed in lieu of foreclosure.

{¶ 13} BAC filed a timely notice of appeal from the trial court's order to convey the mortgaged property to BAC by commissioner's deed. The Darke County Sheriff, the Darke County Treasurer, and the Darke County Clerk of Courts have filed a joint amicus brief in support of the trial court's judgment.

## II

{¶ 14} BAC's assignment of error is as follows:

{¶ 15} "The trial court erred in ordering the subject property be conveyed to appellant via commissioner's deed rather than ordering judicial sale as requested by appellant."

{¶ 16} In its sole assignment of error, BAC argues that the trial court's order for conveyance by commissioner's deed in lieu of a judicial sale is unlawful for seven reasons: (1) the order violates Ohio statutes, (2) the order violates the constitutional separation of powers, (3) the order results in strict foreclosure, which is prohibited in Ohio, 4) the order violates due process, (5) the order creates a cloud on the title to the foreclosed real estate, (6) the order abrogates the parties' contractual rights, and (7) the order improperly compels the mortgagee (i.e., BAC) to accept title to the foreclosed real estate.

{¶ 17} We recently considered and found merit in these arguments in *Wells Fargo Bank, N.A. v. Young*, Darke App. No. 2009 CA 12, 2011-Ohio-122, 2011 WL 245788, a case that is factually very similar to the one now before us. We set forth a comprehensive discussion of the nature of mortgages and foreclosure proceedings in Ohio, both historically and under current law in *Wells Fargo*, at ¶ 21–37.

{¶ 18} Turning to BAC's specific arguments, BAC first claims that the trial court's conveyance of the Evermans' property by commissioner's deed is contrary to the Revised Code. In *Wells Fargo*, we concluded that the trial court's order of conveyance by commissioner's deed in lieu of a judicial sale of the foreclosed property is contrary to Ohio law. Id. at ¶ 39–55, 59.

{¶ 19} BAC also maintains that conveyance by commissioner's deed in lieu of a sale creates a cloud upon the title to the real property and is akin to strict foreclosure. As we explained fully in *Wells Fargo*, 2011-Ohio-122, 2011 WL 245788, at ¶ 57–58, we are also in agreement with this argument. Furthermore, in light of these conclusions, just as we found in *Wells Fargo*, we see no reason to address BAC's additional arguments. Id.

{¶ 20} Finally, we note again that we are sympathetic to the concerns that the trial court sought to address, in attempting to provide a faster and less costly approach to foreclosure. Id. at ¶ 61. However, this is a matter for the legislature, not for the courts. Id. at ¶ 63.

## III

{¶ 21} The trial court's judgment will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

GRADY, P.J., and DONOVAN, J., concur.